607 A.2d 767

**COMMONWEALTH of Pennsylvania**

v.

**Michael James SHERRELL, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 3, 1992.

Filed April 30, 1992.

Suzanne M. Swan, Asst. Public Defender, Pittsburgh, for appellant.

Maria V. Copetas, Asst. Dist. Atty., Pittsburgh, Com., appellee.

Before ROWLEY, President Judge, and FORD ELLIOTT and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the judgment of sentence entered following appellant's convictions for possession[1] of and possession with the intent to deliver[2] crack cocaine, a schedule II controlled substance.[3] The sole issue presented for our review is whether the evidence was sufficient to sustain appellant's conviction for possession with the intent to deliver.[4] For the reasons set forth below, we affirm the judgment of sentence.

We will briefly recount the relevant facts of this case before undertaking our review of appellant's evidentiary challenge. An outstanding arrest warrant for appellant, Michael Sherrell, had been issued with regard to offenses that were unrelated to the case *sub judice*. On March 7, 1990 an unidentified individual contacted the McKees Rocks' police department and informed them that appellant could be found in the Broadhead Manor/McKees Rocks

1. 35 P.S. § 780–113(a)(16).
2. 35 P.S. § 780–113(a)(30).
3. 35 P.S. § 780–104(2)(i)4.
4. We will not examine the sufficiency of the evidence with regard to appellant's conviction for simple possession, as appellant does not attack his conviction for this offense.

section of the City of Pittsburgh.[5] The police promptly proceeded to this area to execute the warrant. Upon their arrival, the police saw appellant standing on the sidewalk conversing with other individuals. As the police exited their vehicles and announced their identity, appellant fled the immediate vicinity and a chase ensued. The police eventually caught appellant and while attempting to hand-cuff him, they observed appellant drop a bag which was later found to contain crack cocaine.[6] A pat-down search for weapons disclosed another bag which also contained crack cocaine.[7] Criminal charges arising out of this incident were later instituted against appellant.

■ Appellant waived his right to a jury trial and the case was tried with the court sitting as finder-of-fact. Prior to trial, appellant orally moved for a dismissal of the count involving the offense of possession with the intent to deliver. After hearing testimony, the court denied this motion. The case then proceeded to trial the following day.[8] Appellant presented no evidence in his defense and after closing argument, the trial court found appellant guilty of both simple possession of and possession with the intent to deliver crack cocaine. Although appellant's post-trial motions were not timely filed, the trial court nevertheless addressed the merits of his claims.[9] Appellant's post-trial motions were denied and appellant was thereafter sen-

5. This portion of the city is a high drug activity area. N.T. at 30–31.

6. This bag contained ten rocks of crack cocaine which in the aggregate weighed 1.88 grams. N.T. at 20 and 76.

7. The bag found inside appellant's jacket contained a single chunk of crack cocaine which weighed 2.97 grams. N.T. at 20 and 76.

8. The evidence introduced at the hearing on the pre-trial motion was expressly incorporated into the record at appellant's trial. N.T. at 78.

9. Because the trial court considered the issues raised in the untimely post-trial motions, appellant's claims have been preserved for appellate review. *Commonwealth v. Markovitch*, 388 Pa.Super. 244, 248, 565 A.2d 468, 471 (1989); *Commonwealth v. McBride*, 391 Pa.Super. 113, 117, 570 A.2d 539, 541 (1990); and *Commonwealth v. Pirela*, 398 Pa.Super. 76, 81, 580 A.2d 848, 851 (1990), *allocatur denied*, 527 Pa. 672, 594 A.2d 658 (1991).

tenced to a term of three (3) to six (6) years' imprisonment. This timely appeal followed.

Appellant contends that the evidence presented by the Commonwealth was insufficient to sustain his conviction for possession with the intent to deliver. In reviewing the merits of this claim,

> the evidence must be viewed in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, it must be determined whether the [fact-finder] could reasonably have found all of the elements of the crime to have been established beyond a reasonable doubt.

*Commonwealth v. Bruner,* 388 Pa.Super. 82, 97, 564 A.2d 1277, 1284 (1989) (citation omitted). *See also Commonwealth v. Smagala,* 383 Pa.Super. 466, 475, 557 A.2d 347, 351 (1989), *allocatur denied,* 524 Pa. 619, 571 A.2d 382 (1989); *Commonwealth v. Parsons,* 391 Pa.Super. 273, 283, 570 A.2d 1328, 1334 (1990); *Commonwealth v. Ramos,* 392 Pa.Super. 583, 592, 573 A.2d 1027, 1032 (1990), *allocatur denied,* 527 Pa. 602, 589 A.2d 692 (1990); *Commonwealth v. Ariondo,* 397 Pa.Super. 364, 382, 580 A.2d 341, 350 (1990), *allocatur denied,* 527 Pa. 628, 592 A.2d 1296 (1991); and *Commonwealth v. Robinson,* 399 Pa.Super. 199, 204–205, 582 A.2d 14, 17 (1990), *allocatur denied,* 528 Pa. 629, 598 A.2d 282 (1991) (for similar considerations). Moreover, "[i]t is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The fact[-]finder is free to believe all, part or none of the evidence." *Commonwealth v. Ariondo, supra* (citations omitted). *See also Commonwealth v. Parsons, supra* (same).

In addition to these considerations, we further recognize that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with the intent to deliver. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather

than with an intent to possess it for personal use. Under Pennsylvania law, intent to deliver may be inferred from possession of a large quantity of controlled substances. Similarly, the absence of intent to deliver may be inferred where only a small amount of the controlled substance was discovered. However, *'the amount [of [the] controlled substance] involved is not necessarily crucial to establishing an inference of possession with the intent to deliver, if ... other facts are present.'*

*Commonwealth v. Ariondo,* 397 Pa.Super. at 383, 580 A.2d at 350–351 (citations omitted) (emphasis added). *See also Commonwealth v. Robinson,* 399 Pa.Super. at 205, 582 A.2d at 17; *Commonwealth v. Ramos,* 392 Pa.Super. at 592–593, 573 A.2d at 1032–1033; and *Commonwealth v. Smagala,* 383 Pa.Super. at 476, 557 A.2d at 351–352 (for similar considerations).

■ Other factors which also may be relevant in establishing an intent to deliver are the presence of drug paraphernalia or unusually large sums of cash. *Commonwealth v. Parsons,* 391 Pa.Super. at 285, 570 A.2d at 1335. *See also Commonwealth v. Rodriguez,* 526 Pa. 268, 276, 585 A.2d 988, 992 (1991).

Further, the particular method of packaging or form of the drug as well as the defendant's behavior similarly may be relevant in establishing an intent to deliver. *See Commonwealth v. Ramos,* 392 Pa.Super. at 594, 573 A.2d at 1033–1034 (nine (9) heat-sealed pre-packaged plastic packets of cocaine, when coupled with defendant's actions in placing the drugs beneath a parked car, sufficiently proved an intent to deliver) and *Commonwealth v. Robinson,* 399 Pa.Super. at 205, 582 A.2d at 17 (1990) (possession of thirty-eight (38) vials of crack cocaine and the absence of any drug paraphernalia which would facilitate immediate consumption of the drug was sufficient to establish the defendant's intent to deliver). We will evaluate appellant's arguments in accordance with the above principles.

■ The record reveals that appellant was found to be in possession of two bags of crack cocaine which respectively contained a single chunk weighing 2.97 grams, and ten rocks of approximately the same size and shape, which in the aggregate, weighed 1.88 grams. N.T. at 24–25 and 76. The crack cocaine was estimated to have a street value of $800.00.[10] *Id.* at 52, 54 and 56. In addition, appellant possessed approximately $20.00 in cash at the time of his arrest and was not observed to have any drug paraphernalia, such as a razor blade to cut the crack cocaine or a pipe or other equipment with which to smoke it. *Id.* at 79–81. Appellant also did not appear to engage in any type of behavior which would be consistent with drug dealing, as he was seen merely standing on a sidewalk conversing with a few other individuals just prior to his arrest. *Id.* at 14 and 79. However, appellant was arrested in an area which is known for its high level of drug activities. *Id.* at 30–31. Further, the police knew that appellant was a drug user. *Id.* at 85. Based on the above information, the Commonwealth requested its expert, Detective Marx, to render his opinion as to whether appellant possessed the crack cocaine with the intent to deliver, and his testimony was as follows:

Due to the amount, the ten pieces of crack and the—where you see a 2.97 grams [sic], if that was the weight of the other [chunk], that would be consistent with—the 2.97 grams would be consistent with what they call an eighth of an ounce of cocaine, and in the form that it was in when I saw it, it was uncut at the time— ... In other words, if you had that amount, [*i.e.*, the single 2.97 gram chunk,] that is a personal use amount. That's an amount that you cut and resell. And with regards to the ten pieces of crack being in the one plastic bag, the way that we've been buying crack and the way—there's two ways it is delivered. One is, they're either in little coin bags,

---

10. Detective Marx, who was qualified as an expert witness, indicated that each of the individual rocks could be sold for $20.00 to $40.00. N.T. at 30. In arriving at the total value of $800.00, Detective Marx estimated the price of the single chunk to be $600.00 and the ten rocks to be worth $200.00, *i.e.*, ten rocks at $20.00 each. *Id.* at 52, 54 and 56.

Ziploc bags, or they're sold just out of hand. In other words, you pull up on the street, and—where he was is a high drug area where they sell a lot of crack, and ... [y]ou drive up on the street. You pull up to the curb. A guy walks over to the car, holds out his hand, and you tell him you want two or three rocks. He shows you maybe five or six, and you pick out what you want, and you pay him.

N.T. at 29–30. Detective Marx attempted to clarify his testimony on cross-examination as follows:

I sounded a little vague. I'll try to explain myself better. The one bag I say was cut was rocks that were individually separate, so each—there was ten pieces, and these ten pieces were similar in size and shape as [if] they were purposely cut like that, and that is frequently the way that we go out and buy crack.... The other stuff I referred to as uncut was a solid piece of crack cocaine. In other words, this crack cocaine ... was not chopped up, but before you could smoke it or deliver it, you would have to chop it up, yes.

*Id.* at 32. Detective Marx added that it would be extremely uncommon for an individual to possess both a solid chunk and a bag of rocks for personal use. *Id.* at 52 and 56. Rather, he believed that it would be more probable for a drug user to purchase the 2.97 gram chunk if he intended to personally use the drug. *Id.* at 52. While Detective Marx's testimony was less than a model of clarity, his opinion essentially was that while appellant's possession of the single chunk of crack cocaine was consistent with personal use, his possession of the bag of rocks was more consistent with drug dealing rather than personal use. Consequently, it was Detective Marx's belief that appellant intended both to use and sell the crack cocaine and his opinion remained unshaken despite vigorous cross-examination by defense counsel. *Id.* at 84 and 88.

Although the above evidence does not present the strongest possession with the intent to deliver case which has come before this court, a review of the totality of the

circumstances and the relevant factors nevertheless persuades us that the Commonwealth sustained its evidentiary burden. As instructed by our prior cases, we must first examine the quantity of the substance possessed by appellant. In this case, the total weight of the cocaine was not unusually large, especially when compared to that in other cases in which the amount of the cocaine was of sufficient quantity as to be inconsistent with personal use. *See, e.g., Commonwealth v. Rodriguez*, 526 Pa. at 276, 585 A.2d at 992 (where defendant possessed three (3) ounces of cocaine) and *Commonwealth v. Ariondo*, 397 Pa.Super. at 384, 580 A.2d at 351 (where the defendant possessed 12.6 grams of cocaine at his residence and an additional 126.7 grams of cocaine had been previously removed from the package by the police). However, the amount of cocaine possessed by appellant here, 4.85 grams, was much larger than that which this court has found to be consistent with personal use. *See Commonwealth v. Smagala*, 383 Pa.Super. at 477, 557 A.2d at 352 (where we found the defendant's possession of .8 grams of cocaine to be consistent with personal use). Possession of a small or moderate quantity of drugs is not dispositive as we must ascertain whether the other factors evidence an intent to deliver. *Commonwealth v. Parsons* and *Commonwealth v. Ramos, supra.*

As noted above, another relevant factor is the presence or absence of a large quantity of cash. *Commonwealth v. Parsons* and *Commonwealth v. Rodriguez, supra.* In this case, appellant was found to possess a little more than $20.00 at the time of his arrest. Thus, this factor does not overwhelmingly support an inference of drug dealing rather than drug usage.

We must also examine the type of behavior engaged in by appellant. Here, appellant was known to be a drug user. Although appellant was arrested while in a high drug activity zone, this factor is not of great significance because appellant may have visited the area to purchase the crack cocaine. More importantly, the police did not observe appellant engage in any type of conduct which would be

consistent with drug dealer rather than drug user behavior. *Compare Commonwealth v. Ramos,* 392 Pa.Super. at 594–595, 573 A.2d at 1033–1034 (where the defendant denied use and possession of the drugs, and the police had observed the defendant hiding the pre-packaged drugs beneath a parked car; behavior of this type was found to be typical of juvenile drug dealers). An intent to deliver likewise cannot be established through appellant's prior conduct because there was no evidence that appellant had recently sold crack cocaine to the police or a confidential informant. *Compare Commonwealth v. Keefer,* 338 Pa.Super. 184, 190, 487 A.2d 915, 918 (1985) (evidence deemed sufficient to establish intent to deliver where, in addition to presence of drugs and drug paraphernalia, there was evidence that the defendant had recently sold drugs to a police informant).

The final factors which we must examine are the presence or absence of drug paraphernalia and the packaging or form of the drugs. *Commonwealth v. Parsons, Commonwealth v. Ramos,* and *Commonwealth v. Robinson, supra.* In this case, appellant was not found to be in possession of any type of drug paraphernalia or equipment which would be consistent with drug distribution activities. *Compare Commonwealth v. Ariondo,* 397 Pa.Super. at 384, 580 A.2d at 351 (where the defendant had a triple-beam balance scale, a portable gram scale, four (4) bottles of inositol (a cutting agent), two (2) electronic beepers, gem-pacs and plastic baggies) and *Commonwealth v. Parsons,* 391 Pa.Super. at 284, 570 A.2d at 1334–1335 (where the defendant had an electronic scale, a second scale with weights, assorted sizes of plastic bags, and tally sheets indicating individuals' names, amounts and other drug-related notations). Appellant similarly did not possess any equipment such as a razor blade, a pipe or some other implement which would be conducive to his immediate consumption of the drug. *Compare Commonwealth v. Smagala,* 383 Pa.Super. at 476, 557 A.2d at 352 (where the defendant was found to have previously-used glassine baggies, hundreds of burnt matches, used "Klennex" [sic], a glass pipe, wire mesh

screens, a razor blade and a rolled-up twenty dollar ($20.00) bill; paraphernalia of this type was consistent with personal usage). In addition, one bag of the cocaine contained ten rocks which were all of similar size and shape, indicating that the rocks had been purposely cut in this manner for distribution. The packaging and form of the rocks, when considered in conjunction with appellant's lack of drug paraphernalia to facilitate immediate consumption of the crack cocaine and Detective Marx's expert opinion that it would be highly unusual to find a drug user in possession of both a single solid chunk and a bag of crack cocaine rocks, sufficiently established beyond a reasonable doubt that appellant intended to distribute or re-sell some of the crack cocaine found in his possession. *See Commonwealth v. Robinson*, 399 Pa.Super. at 205, 582 A.2d at 17 (evidence sufficient to establish intent to deliver where the defendant possessed thirty-eight (38) vials of crack cocaine, had no paraphernalia which would be conducive to immediate consumption, and where a qualified expert found these circumstances indicative of an intent to deliver) and *Commonwealth v. Ramos*, 392 Pa.Super. at 594–595, 573 A.2d at 1033–1034 (evidence sufficient to establish intent to deliver where the cocaine was divided into nine (9) pre-packaged heat-sealed plastic packets, a form which was typical of juvenile drug sales).

In sum, we have carefully examined appellant's claim in light of the evidence contained in the certified record and the guidance provided by relevant authorities. Our review compels us to conclude that the Commonwealth's evidence was sufficient to establish that appellant possessed the crack cocaine with the intent to deliver. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.