COMMONWEALTH of Pennsylvania, Appellee,

v.

**Robert RATSAMY, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 22, 2005.

Filed Oct. 18, 2005.

Thierry L. McEldowney, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: MUSMANNO, BENDER and OLSZEWSKI, JJ.

OPINION BY BENDER, J.:

¶ 1 This is an appeal from a judgment of sentence imposed upon Appellant after he was convicted in a bench trial of possession of a controlled substance, possession with intent to deliver (PWID) a controlled substance, and one count each of carrying a firearm, (1) without a license, and (2) on a public street. Appellant contends that the conviction for PWID is not supported by sufficient evidence and also against the weight of the evidence. Appellant also contends that the court abused its discretion by providing an answer to a question that was being directed to the Commonwealth's expert and then subsequently admitting the witness as an expert. We reverse the conviction for PWID and remand for resentencing on the remaining convictions.

¶ 2 Appellant was arrested on April 9, 2003 and charged with conspiracy, drug possession charges and weapons charges. At approximately 10:30 p.m. on that day, Philadelphia Police Officers were conducting an undercover surveillance of the 6600 block of Woodland Avenue. The surveillance targeted suspected drug trafficking activity with a focus upon an individual named Lamont Taylor. While the surveillance was ongoing, Officer Martinez observed Appellant and another man, later identified as Rom Sang, approach Taylor and engage him in conversation. After conversing awhile, Appellant was observed lifting up his T-shirt and removing a handgun. Appellant gestured with the gun in Taylor's direction, after which some laughter broke out, then Appellant put the gun back in his waistband and he and Sang walked toward and then into a restaurant located at 6519 Woodland Avenue. Based upon the observation of a handgun, Officer Martinez radioed backup to apprehend Appellant. In response to the call, several

officers converged upon Appellant and Sang inside the restaurant. When Officer Martinez arrived inside the restaurant, he observed the two men on the floor being held at gunpoint. One of the other officers, Officer McNorty, searched Appellant and recovered a black handgun loaded with five live rounds, a plastic bag containing a single chunk or "rock" of "crack" cocaine and $349 in currency. Sang was found to be in the possession of some currency and a plastic bag containing 199 plastic packets. Appellant was then arrested and taken into police custody.

¶ 3 Appellant proceeded to a non-jury trial on September 29, 2004. At the conclusion of the trial, Appellant was found guilty of the above-listed offenses. Appellant was acquitted of conspiracy and possession of drug paraphernalia. Appellant was sentenced on December 13, 2004, pursuant to the mandatory minimum provisions of 18 Pa.C.S. § 7508 to three to six years' imprisonment. Appellant subsequently filed the present, timely appeal.

■■■ ¶ 4 Appellant first contends that the evidence was insufficient to sustain the conviction for PWID. We agree. Our standard of review when reviewing the sufficiency of the evidence has been recited as follows:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1014—1015 (Pa.Super.2002) (internal citations and quotation marks omitted). With respect to sufficiency cases involving PWID, *Commonwealth v. Jackson*, 435 Pa.Super. 410, 645 A.2d 1366, 1368 (1994), is instructive:

> The Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance. It is well settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with the intent to deliver. *Commonwealth v. Ramos*, 392 Pa.Super. 583, 592, 573 A.2d 1027, 1032 (1990); *Commonwealth v. Fisher*, 316 Pa.Super. 311, 322, 462 A.2d 1366, 1371 (1983); *see also Commonwealth v. Macolino*, 503 Pa. 201, 205–206, 469 A.2d 132, 134 (1983).
>
> In Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of controlled substances. *Commonwealth v. Santiago*, 462 Pa. 216, 223, 340 A.2d 440, 444 (1975); *Commonwealth v. Smagala*, 383 Pa.Super. 466, 476, 557 A.2d 347, 351 (1989); *Common-*

wealth v. Pagan, 315 Pa.Super. 7, 8–9, 461 A.2d 321, 322 (1983); Commonwealth v. Bagley, 296 Pa.Super. 43, 46–47, 442 A.2d 287, 289 (1982). It follows that possession of a small amount of a controlled substance supports a conclusion that there is an absence of intent to deliver. Commonwealth v. Gill, 490 Pa. 1, 5, 415 A.2d 2, 4 (1980); Smagala, 383 Pa.Super. at 476, 557 A.2d at 352; Pagan, 315 Pa.Super. at 11, 461 A.2d at 323.

Notably, "[i]f, when considering only the quantity of a controlled substance, it is not clear whether the substance is being used for personal consumption or distribution, it then becomes necessary to analyze other factors." Id.

¶ 5 In the present case, the Commonwealth's "expert," Officer Andre Schafer, opined that Appellant possessed the drugs with the intent to deliver. Although we will address this expert opinion in greater detail later in this Opinion, when Officer Schafer's testimony is reviewed it is clear that that opinion rests essentially upon a speculative leap from the size of the piece of crack cocaine in Appellant's possession. This is so because other than the size of the "rock," there is really no evidence that Appellant possessed this piece of crack with the intent to deliver it to another. Appellant possessed no paraphernalia commonly found in the distribution of crack cocaine, Appellant was not seen distributing drugs to another nor was there any testimony from someone indicating that they had previously purchased drugs from Appellant.

¶ 6 Although Appellant's companion was in possession of packets which could possibly be used to package pieces of crack cocaine, it is notable that the court found Appellant not guilty of conspiracy, thereby indicating that the evidence was insufficient to establish that the two men were working in concert.[1] Also notable is the fact that in reaching his opinion Officer Schafer indicated that he did not consider Sang's possession of 199 plastic packets that the crack was possessed with intent to deliver. N.T. Trial, 9/29/04,at 18. As such, the Commonwealth's case essentially rests upon the fact that Appellant possessed a single rock of cocaine, albeit one larger than is commonly purchased. From this fact, the Commonwealth's expert opines that the cocaine must have been possessed with the intent to deliver.

¶ 7 The above demonstrates that the Commonwealth's expert opinion represents a leap that is not corroborated by other independent evidence. It is also a leap that does not appear to be totally justified by logic. The piece of crack cocaine seized from Appellant weighed 6.2 grams, or less than one-quarter ounce, and less than the size of two "eight-balls,"[2] a quantity of drugs that is not an uncommon purchase from drug sellers.[3] As such, it is hardly inconceivable that one who could afford to do so would buy crack cocaine in the quantity found here. Moreover, the

---

1. We note our agreement with this assessment.

2. The term "eighth ball" is a street term for a piece of crack cocaine weighing one-eight of an ounce or 3.5 grams. Two eight balls would weigh 7 grams.

3. A non-exhaustive list of cases referring to purchases of "eight-balls" include Commonwealth v. Barnes, 871 A.2d 812 (Pa.Super.2005); Commonwealth v. Moss, 852 A.2d 374 (Pa.Super.2004); Commonwealth v. Galloway, 771 A.2d 65 (Pa.Super.2001), and Commonwealth v. Cappellini, 456 Pa.Super. 498, 690 A.2d 1220 (1997). Moreover, in Commonwealth v. Sherrell, 414 Pa.Super. 477, 607 A.2d 767 (1992), we paraphrased an expert's testimony to the effect that a single chunk or rock of crack weighing approximately an eighth of an ounce would be consistent with personal use.

cost of the drugs in question was not really that substantial. The testimony at trial indicated that the rock Appellant possessed would likely have been acquired for $200 to $250. This is not a case where an individual was stopped and found to be in the possession of $50,000 worth of drugs and then tried to assert that the drugs were strictly for personal use.

¶ 8 To counter the idea that the quantity of drugs found in Appellant's possession was consistent with personal use, the Commonwealth's expert opined that frequently individuals purchasing a "rock" of that size would have the intent to break it into smaller pieces for resale. However, this opinion rests largely on the premise that the average, drug-addicted crack user rarely if ever possesses enough money to buy crack in a larger quantity. Because of a lack of funds, the average user Officer Schafer came across purchased only one bag at a time. N.T. Trial, 9/29/04, at 19. While Officer Schafer may have testified as to a common experience, his premise would not hold up if a person possessed enough money to make such a purchase. Notably, the Commonwealth did not provide any evidence that Appellant was without a source of income or otherwise lacked sufficient funds to make a $200–250 drug purchase. As indicated above, we are not dealing with a sum of drugs that costs tens of thousands of dollars or even thousands of dollars. The amount of drugs purchased would certainly be within the financial means of many a working man.

¶ 9 Conversely, a drug user that does have sufficient means to buy $200–250 worth of drugs at a time would, from a certain perspective, be wise to do so, as by doing so he reduces his risk of getting caught or having other misfortune befall him as opposed to making numerous purchases of a smaller quantity. Of course, as touched upon earlier, he would also enjoy the economy of buying a larger size piece of crack.

¶ 10 When one reduces the expert's opinion to its essence, the Commonwealth's expert offers an opinion based upon statistical extract. Because the expert's experience was that many individuals who have purchased a rock of the size in question here did so with the intent to break it up and sell it to others, the expert opines that Appellant must have had the similar intent. This approach is akin to criminal propensity evidence that is generally deemed inadmissible.[4] Query: if a defendant's past criminal history is not competent evidence to prove his guilt of the offense currently charged, how can the criminal actions of others be used as a basis to presume guilt of another person altogether?

¶ 11 While the Commonwealth cites many cases to support its position, upon review of these cases we find that they do not support the conviction upon the facts found here. The Commonwealth cites the cases of *Commonwealth v. Bess*, 789 A.2d 757 (Pa.Super.2002), *Commonwealth v. Drummond*, 775 A.2d 849 (Pa.Super.2001), *Commonwealth v. Johnson*, 782 A.2d 1040 (Pa.Super.2001), *Commonwealth v. Williams*, 419 Pa.Super. 380, 615 A.2d 416 (1992), and *Commonwealth v. Sherrell*, 414 Pa.Super. 477, 607 A.2d 767 (1992). We address these cases below.

¶ 12 Initially, we note that the Commonwealth's citation to *Bess* is somewhat misleading, as that case did not involve a challenge to the sufficiency of the evidence to support the conviction of PWID but, rather, the applicability of the mandatory minimum sentencing provisions. Application of this provision required a determina-

---

4. *See Commonwealth v. Hawkins,* 295 Pa.Super. 429, 441 A.2d 1308 (1982).

tion, prior to sentencing, of how much of the drugs the appellant was found to possess were intended for delivery to others. However, this determination was made upon a preponderance of the evidence basis and not beyond reasonable doubt. *Bess,* 789 A.2d at 761. Nevertheless, there is a very significant fact that distinguishes *Bess* from the present case. Bess was arrested a week after selling crack cocaine to an undercover Pennsylvania State Police Trooper. The fact that Bess had sold, one week previously, the same kind of drug he was found to possess upon arrest, along with the fact that the drugs were packaged for sale, are facts not found here, which tip the scale strongly toward intent to deliver.

¶ 13 Likewise, in *Drummond:*

> At the jury trial, Detective Philip Roberts testified that pursuant to the search warrant, $75 and two packets of cocaine were seized from Appellant's person. N.T., 11/5/99, at 34. Furthermore, three clear bags of cocaine, $205 in cash, and thirty smaller ziploc bags were seized from the area within where Appellant had been sitting. *Id.* at 35–36. Each of these bags was heat-sealed. *Id.* at 36. Appellant himself stated that although he was not a "drug pusher," he had been selling drugs in order to make money to return to Jamaica. *Id.* at 54.

*Drummond,* 775 A.2d at 854. *Drummond* is immediately distinguishable by the incredibly incriminating admission of the defendant that he "had been selling drugs in order to make money to return to Jamaica." While possibly Drummond may have believed that such selling of drugs did not make him a "drug pusher," it is not necessary to prove that one is a full-time drug seller in order to satisfy the terms of the offense. Additionally, although Drum-

mond possessed roughly the same amount of drugs as Appellant here, they were found in several packets. Of course, purchasing crack cocaine in smaller quantities belies the presumption of personal use as one would pay much more for multiple packets than if one bought larger size rocks.

¶ 14 In *Johnson:*

> The facts of record establish that on April 28, 2000, at approximately 1:30 a.m., appellant was observed by a Harrisburg police officer, who knew him to be on parole, in a high drug area exiting a bar. The officer approached appellant and conducted a consensual search. The officer found two glassine bags containing apparent crack cocaine in the right inside pocket of Johnson's jacket. When the officer announced that she was placing him under arrest, appellant attempted to flee but was apprehended by a second officer. In a subsequent search of appellant's person, the following was seized: seven additional glassine bags containing apparent crack cocaine; $86.00 in U.S. currency; and a beeper.

*Johnson,* 782 A.2d at 1040–41. Thus, in total, Johnson was found in possession of nine bags containing crack cocaine and a beeper, an item commonly used in the drug trade. Notably, the expert who testified in *Johnson* indicated that a user would likely purchase two "street balls"[5] as opposed to nine individual bags as the two different quantities would cost roughly the same yet two "street balls" would yield roughly twice the amount of crack to the user. *Id.* at 1041.

¶ 15 In *Williams:*

> The record revealed eight small zip-lock plastic baggies of cocaine, the aggregate weight of which was 5.94 grams, all of

---

**5.** The expert in *Johnson* indicated that a "street ball" weighed 1.5 grams. Thus, a

"street ball" is slightly less than a sixteenth of an ounce.

which were contained in one larger bag, were retrieved from the appellant's vehicle. It was the investigating officer, Gregory Taylor's testimony, based on his experience as an undercover narcotics investigator, the cocaine packets confiscated were not randomly purchased on the street but rather were representative of common packaging for distribution, the quantities contained known [sic] on the street as "sixteenths" (approximately 1.75 grams) (N.T., 8/5/91, pp. 91–92). Taylor also stated the $3,601 retrieved from appellant's sock by the arresting officer, Robert McCallister, was comprised mostly of $20 bills folded into $ 100 lots, a very common practice by those involved with trafficking narcotics (*Id.*, pp. 93–94).

*Williams*, 615 A.2d at 418. Although Williams was found in possession of a similar weight of crack as our Appellant, there are noticeable differences between the present case and *Williams*. Most notable among those differences was the fact that in *Williams* there were eight smaller packets, each of which contained a "sixteenth," a popular weight for purchase on the street. Additionally, Williams possessed several thousand dollars, which sum of money was bundled in $100 lots. According to the expert, this is a common practice among street dealers. Of course, it makes sense that if one possessed thousands of dollars and was interested in purchasing a large quantity or weight of crack, he would purchase larger pieces and enjoy the economy provided by buying in "bulk."

¶ 16 Lastly is *Sherrell*. Of principal interest, in *Sherrell*:

The record reveal[ed] that appellant was found to be in possession of two bags of crack cocaine which respectively contained a single chunk weighing 2.97 grams, and ten rocks of approximately

the same size and shape, which in the aggregate, weighed 1.88 grams. N.T. at 24–25 and 76. The crack cocaine was estimated to have a street value of $800.00.

*Sherrell,* 607 A.2d at 770.

¶ 17 Perhaps, what is most notable about *Sherrell* is the panel's candid admission that the case was not the strongest PWID case to come before the Court. *Id.* at 771. In so commenting, the panel gives the impression that the evidence in *Sherrell* was barely sufficient to support the verdict. Despite the panel's commentary, there remain aspects of *Sherrell* that are more consistent with intent to deliver that are lacking in the present case. For instance, in *Sherrell,* the defendant was found with two bags of crack cocaine. One bag contained a single chunk weighing 2.97 grams while the other contained ten "rocks." Notably, "Detective Marx added that it would be extremely uncommon for an individual to possess both a solid chunk and a bag of rocks for personal use." *Id.* at 771. We characterized the expert testimony thusly: "that while appellant's possession of the single chunk of crack cocaine was consistent with personal use, his possession of the bag of rocks was more consistent with drug dealing rather than personal use." *Id.* Adhering to this viewpoint, the fact that our Appellant possessed a single rock of cocaine as opposed to several smaller, individually packaged pieces, argues for the prospect that Appellant did not possess the cocaine with the intent to deliver.

¶ 18 It is indeed possible that Appellant possessed the 6 grams of cocaine with intent to break it up and resell it to others. However, it cannot be said that the Commonwealth's evidence proves this proposition beyond reasonable doubt. As such, we find the evidence insufficient to support the verdict on the PWID conviction and will reverse this conviction. The other

convictions remain firm. Since Appellant was sentenced to three to six years' imprisonment pursuant to the mandatory minimum provisions and was not sentenced further on the other charges, it is necessary for us to remand the case for resentencing.[6]

¶ 19 Judgment of sentence for possession with intent to deliver reversed. Remanded for resentencing on the remaining convictions. Jurisdiction relinquished.

---

**6.** Our disposition renders Appellant's challenge to the weight of the evidence moot. As for Appellant's third issue regarding the Commonwealth's expert, we find that issue without merit and deny it without further comment.