**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Roger Ellis DUNCAN, Appellant.**

Superior Court of Pennsylvania.

Submitted June 11, 2007.

Filed Aug. 27, 2007.

Randall L. Miller, Reading, for appellant.

Alisa R. Hobart, Asst. Dist. Atty., Reading, for the Com., appellee.

BEFORE: HUDOCK, ORIE MELVIN, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Roger Ellis Duncan appeals the judgment of sentence imposed following his conviction of Possession With Intent to Deliver (PWID), Possession of Drug Paraphernalia, and Driving While Operating Privilege Suspended or Revoked. *See* 35 P.S. § 780–113(a)(30), (32); 75 Pa.C.S. § 1543(a) (respectively). Duncan contends that the trial court erred in refusing to suppress physical evidence seized during a search of his car on grounds that his consent was tainted and the search therefore illegal. Duncan argues, in addition, that the evidence was not legally sufficient to sustain his PWID conviction. We find no merit in either of Duncan's assertions. Accordingly, we affirm his judgment of sentence.

¶ 2 The trial court related the following factual history of events surrounding Duncan's arrest:

On December 10, 2005, Officer Christopher Sacks, of the Muhlenberg Township Police Department was on patrol in Muhlenberg Township. Officer Sacks was driving a marked patrol vehicle and wearing a uniform with the badge of authority. At 11:45 a.m.[,] he observed a gold Cadillac automobile make a right turn from Fraver Drive onto the Fifth Street Highway without using a turn signal while stopped at a stop sign. Officer Sacks activated his patrol lights and initiated a traffic stop on the basis of the Vehicle Code. The Cadillac pulled into the parking lots of Axis Self Storage because there was insufficient area to pull onto the shoulder of the road.

Upon approaching the operator of the vehicle, later identified as [Duncan], Officer Sacks requested [Duncan's] driver's license, registration, and proof of insurance. [Duncan] provided him with a Pennsylvania identification card and told Officer Sacks that he did not have a

driver's license because his license was suspended. The passenger in the vehicle was identified as Christine Denunzio. Officer Sacks returned to his patrol car in order to prepare a written citation for a violation of the vehicle code and also to check the registration of the vehicle. . . . After completing the citation, Officer Sacks returned to the Cadillac in order to procure [Duncan's] signature on the citation.

Because a large puddle of water covered most of the parking lot and was immediately next to the Cadillac, Officer Sacks requested that [Duncan] exit the vehicle in order to sign the citation. When the request was made, Officer Sacks was approximately four (4) to five (5) feet away from [Duncan's] vehicle because of the puddle. [Duncan] agreed to exit his car, and when he exited the Cadillac, Officer Sacks observed, on the driver's seat of the vehicle, a plastic baggie. Having taken numerous classes pertaining to the identification of illegal narcotics and having made hundreds of arrests for possession of controlled substances, Officer Sacks believed the substance in the plastic baggie to be a controlled substance because of the way in which it was packaged. The baggie was in plain view on the seat, and clearly visible when the driver's door opened and Duncan exited the vehicle. The baggie was located just past halfway on the seat, closer to the back rest and closer to the door than the center consol.

Officer Sacks instructed [Duncan] that [he] was free to leave, but that he would have to call someone with a valid driver's license to move the vehicle, and then gave [Duncan] a summary citation for driving under suspension pursuant to 75 Pa.C.S.A. § 1543(a).

Officer Sacks walked back toward his patrol vehicle, but before [Duncan] reentered his vehicle, Officer Sacks asked [him] if he would agree to a search of the vehicle [and Duncan said yes]. After retrieving the baggie and its contents, which he believed to contain controlled substances, he placed [Duncan] under arrest. [Duncan] stated that "We're just trying to get high."

[Duncan] was handcuffed, at which point he admitted that he had more drugs on his person. [Duncan] was searched incident to arrest. In [Duncan's] coat pocket Officer Sacks found a plastic sandwich bag containing six (6) small blue baggies[ ] containing what appeared to be a controlled substance, and a smaller plastic bag with a red apple printed on it. Contained within the apple bag were twenty (20) small red plastic bags. These twenty (20) bags also contained controlled substances. In [Duncan's] left pants pocket, there were empty red and blue glassine bags, nearly one hundred (100) in number, a plastic straw, and small rubber bands. There was not any residue in these bags. The small bags from the coat and pants were nearly identical. Upon analysis by the Pennsylvania State Police laboratory, the substances suspected of being drugs tested positive for being crack cocaine and having a total weight of 3.3 grams.

Trial Court Opinion, 2/9/06, at 1–3.

¶ 3 Following a preliminary hearing, Duncan's counsel sought suppression of all evidence seized during the course of the stop on grounds that it was not sufficiently separated from the subsequent request to search to allow Duncan to feel free of police pressure before giving permission for the search of his vehicle. The trial court, the Honorable Paul M. Yatron, denied Duncan's motion and the matter proceeded to trial before a jury. At trial, the Commonwealth presented the expert testimony of Corporal Scott Errington, a Berks

County detective with over 15 years' experience in drug trafficking interdiction. Corporal Errington expressed the opinion that the evidence established Duncan's intent to distribute cocaine in view of both the number of empty bags he carried on his person (nearly 100), and the fact that the value of the drugs Duncan was carrying was substantially greater packaged in the small packets he was carrying than it would have been in bulk form. Accordingly, Errington drew the conclusion that the packets of drugs Duncan possessed were not for personal use but rather for resale. Although the Commonwealth did not present evidence that Duncan possessed any of the other incidents commonly associated with the drug trade, *i.e.,* large amounts of money, firearms, scales, a transaction ledger, the jury found him guilty as charged. Judge Yatron later imposed sentence of three to six years' imprisonment with credit for over one year time served. Duncan then filed this appeal, raising the following questions for our consideration:

A. Whether the evidence at trial was insufficient to convict Appellant of Possession With Intent to Deliver a Controlled Substance (Cocaine)?

B. Whether the suppression court erred in denying Appellant's suppression motion because the police stop was an investigating [sic] detention that made any subsequent consent to search invalid because of the unlawful detention?

Brief for Appellant at 3. In the interest of clarity, we will address Duncan's second question first, as his conviction cannot be sustained unless based upon lawfully obtained evidence. Accordingly, we consider whether the trial court erred in denying Duncan's suppression motion.

Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Reppert,* 814 A.2d 1196, 1200 (Pa.Super.2002) (*en banc*).

¶ 4 Duncan argues here, as he did in support of suppression, that the circumstances of his initial detention prior to Officer Sacks's request to search his car did not allow for a voluntary consent. Brief for Appellant at 14–15. Duncan reasons that because Officer Sacks would not permit him to drive in view of his license suspension, the officer's instruction that he was free to leave was effectively meaningless in that Duncan had no means to leave. Brief for Appellant at 14–15. Judge Yatron concluded that the circumstances at bar are materially indistinguishable from those in *Commonwealth v. Strickler,* 563 Pa. 47, 757 A.2d 884 (2000), our Supreme Court's benchmark decision on searches subsequent to a lawful traffic stop. *See* Trial Court Opinion, 4/27/06, at 2–3 (discussing). We find no error in the trial court's conclusion.

¶ 5 In reviewing Duncan's argument, we note initially that he has failed to cite any authority that substantiates his suggestion that a defendant's inability to leave the scene of a prior stop due to factors other than police action invalidates his consent to search even where the investigating officer has expressly told him that he need not consent. We are not aware of any authority for so far-reaching a proposition; indeed, as our Supreme Court made clear in

*Strickler,* "[t]he presence of an express admonition to the effect that the citizen-subject is free to depart is a potent, objective factor that favors such conclusion." 757 A.2d at 899. We recognize nevertheless, as the Supreme Court also instructed, that "[t]he conferral of the 'free-to-go' advice is, itself, not a reason to forego a totality assessment, as, for example, the presence of a drawn weapon or the absence of any available means of egress would be circumstances remaining after the ostensible conclusion of the traffic stop which would color any such advice." *Id.* at 899 n. 24. In this instance, however, a totality assessment merely confirms the trial court's conclusion that Duncan voluntarily consented to the search.

■ ¶ 6 Neither Duncan nor the Commonwealth dispute that Officer Sacks had conducted an investigative detention in the form of a traffic stop and that Duncan had therefore been seized. Accordingly, we must discern whether the totality of the circumstances establishes that Duncan gave his consent to search voluntarily during the subsequent encounter. *See Strickler,* 757 A.2d at 888 ("The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and ultimately the voluntariness of the consent."). The record here establishes that Officer Sacks conducted a lawful traffic stop and that during the stop he asked Duncan to step out of the car. Nevertheless, the record does not document the officer's direction so much as a display of authority as an exercise in prudence, Duncan having parked in an area where water had pooled during a recent rain, making approach of the vehicle by the officer impracticable. When Duncan exited the vehicle, Officer Sacks did not act on his observation of the contraband lying in plain view on the driv-

er's seat but instead proceeded with the traffic stop. After he had finished his investigation, the officer told Duncan he was free to go, but that due to his license suspension he would have to contact someone else to remove the car. Significantly, the record also establishes that when Officer Sacks made his request to search, he reminded Duncan that he did not have to consent and was in fact free to go. Thus, Officer Sacks assured Duncan of the voluntary nature of the continuing interaction not once, but twice.

■ ¶ 7 Although under more coercive circumstances, even repeated assurances might not have established the voluntary nature of Duncan's further interaction with Officer Sacks, such circumstances are not in evidence here. This stop occurred in the middle of the day, at approximately noon; the stop occurred in an urban area rather than on a limited access highway; and Duncan's car remained in a parking lot, where it would be relatively secure for a reasonable period of time. Moreover, Duncan was not traveling a remote distance from home, and Officer Sacks's direction not to drive thus did not strand Duncan and his companion on the side of road without further recourse. Although Duncan may have preferred a different resolution, nothing prevented him from walking from the car to a local business establishment to telephone a friend or family member, presuming that neither he nor his companion had a cell phone. Accordingly, we find nothing inherently coercive in Officer Sacks's prohibition of Duncan's driving from the scene of the stop so as to have invalidated Duncan's consent to search his car. Therefore, the trial court did not err in deeming Duncan's consent voluntary and denying his motion to suppress the evidence seized during the search.

¶ 8 In support of his remaining question, Duncan contends that the evidence adduced at trial was not legally sufficient to sustain his conviction of PWID. Brief for Appellant at 9. Our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000).

> "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." · Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty," and may sustain its burden by means of wholly circumstantial evidence. Significantly, "[we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed."

*Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005) (citations omitted). The Crimes Code specifies the relevant elements of PWID as follows:

¶ **780–113. Prohibited acts; penalties**

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\* \* \* \*

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. 780–113(a)(30).

¶ 9 Duncan argues that the quantity of drugs on his person and the manner in which they were packaged do not necessarily suggest anything other than personal use. Brief for Appellant at 12. In addition, he contends, the evidence does not include any of the items commonly associated with drug distribution, *e.g.*: large amounts of money, firearms, scales, a transaction ledger, a quantity of cutting agent, or a cell phone. Brief for Appellant at 12–13. Under similar circumstances, he argues, this Court has reversed convictions for PWID, concluding that the evidence was consistent only with simple possession. Brief for Appellant at 10–12 (citing, *inter alia, Commonwealth v. Ratsamy*, 885 A.2d 1005 (Pa.Super.2005), *appeal granted in part*, 590 Pa. 676, 912 A.2d 1292 (2006); *Commonwealth v. Kirkland*, 831 A.2d 607 (Pa.Super.2003); *Commonwealth v. Sherrell*, 414 Pa.Super. 477, 607 A.2d 767 (1992)). We find no error in the trial court's disposition of this issue.

¶ 10 Duncan's assertion of evidentiary insufficiency appears to rest on the reasoning that the quantity of a controlled substance found on a defendant's person is largely dispositive of his guilt of PWID and that unless police find other incriminating evidence in his possession, a conviction of PWID cannot stand. *See* Brief for Appellant at 13. Unfortunately, Duncan's theory fails to account for the new and unused distribution packaging found in his left pocket, which was identical to the packaging of the 26 packets of drugs that police found in his right pocket. While the right pocket contained 20 red $10 bags of cocaine and six blue $20 bags, the left pocket contained almost 100 empty red and blue bags. None of those 100 bags contained drug residue, thus establishing

that they were intended packaging for controlled substances, rather than the remnants of previous "hits." Moreover, the left pocket also contained small rubber bands, effective for sorting bagged $10 and $20 packets into bundles. The match of the bags, pocket for pocket, to those already filled with cocaine, when considered in the context of the remaining evidence, is more than ample to establish Duncan's intent to distribute the cocaine inside. Accordingly, Duncan's challenge to the legal sufficiency of the evidence is without merit.

¶ 11 For the foregoing reasons, we affirm Duncan's judgment of sentence.

¶ 12 Judgment of sentence **AFFIRMED.**