J-S02032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CARL DANIELS LOVE, JR. | |
| Appellant | No. 861 EDA 2014 |

Appeal from the Judgment of Sentence entered on February 4, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-CR-0001921-2013

BEFORE:  MUNDY, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED MARCH 24, 2015**

Carl Daniels Love, Jr., appeals his February 4, 2014 judgment of sentence, which was imposed after jury convictions of two counts of possession of a controlled substance[1] and two counts of possession of a controlled substance with the intent to deliver ("PWID").[2]  We affirm.

The trial court summarized the factual history of this case as follows:

On March 12, 2013[,] at approximately 4:09 p.m., Detective Jerry Goodman of the Haverford Township Police Department was conducting surveillance for drug activity in the Sunoco gas station parking lot located at 400 East Township Line Road, Havertown, Delaware County, PA 19083.  Detective Goodman was in an unmarked police vehicle and in plain clothes.  While on location, he observed a gold colored vehicle parked on the west side of the Sunoco parking lot with a black male sitting in the

_____

[1]    35 P.S. § 780-113(a)(16).

[2]    35 P.S. § 780-113(a)(30).

driver's seat. The unknown black male parked the vehicle against the parking spots and appeared to be waiting for someone. Detective Goodman drove next to the vehicle and observed the driver who looked over at him. Detective Goodman then drove to the west side of the parking lot and continued surveillance.

A short time later, a white male later identified as Robert Link drove up to the gas pump in a black . . . Hyundai Sonata. Detective Goodman had received confidential information that Robert Link is involved in drug trafficking. Link proceeded to the gold colored vehicle and handed the black male a quantity of US currency through the passenger side door. In exchange the black male handed Link an amber colored pill bottle. Detective Goodman knew from training and experience that drug dealers commonly use amber colored prescription bottles for containers for controlled substances. The black male then left in the gold colored vehicle onto Township Line Road.

Detective Goodman knew from training and experience that he witnessed a hand to hand exchange. Detective Goodman has made numerous narcotics arrests in the Sunoco parking lot located at 400 East Township Line Road. Detective Goodman parked his vehicle behind the black Sonata and approached Robert Link and observed him place the amber bottle into the middle console. Detective Goodman advised Link that he was a police officer and displayed his badge.

Detective Goodman advised Link that he observed him purchase narcotics and that he also observed him place the narcotics into his middle console. Link admitted to Detective Goodman that he had just purchased . . . one hundred – 30 mg oxycodone pills and placed them into the middle console. Detective Goodman ordered Link out of the vehicle whereupon Link was arrested and the oxycodone pills were confiscated. In addition, police located . . . one alprazolam, 2 mg pill[,] one additional oxycodone pill and $52.00 US currency. Detective Goodman advised Sgt. Chambers[3] that the unknown black male left the area in a gold colored Lincoln Continental and that the vehicle had a partial registration of JD – 1681 with a paper tag in the upper driver's side rear window.

---

[3]     Sgt. Chamber's first name does not appear in the certified record.

Link was transported back to police headquarters and placed into the Investigation's interview room [*sic*]. Detective Goodman read Link his **Miranda**[4] Warnings and Link agreed to speak with police. Link signed the **Miranda** Waiver. Officer Reynolds[5] was also present. Link advised Detective Goodman that he was on probation and that he just purchased 100 oxycodone pills from "C" at the Sunoco for $1800.00 US currency. Detective Goodman requested consent for a search of Link's cell phone and Link consented. Link signed a Delaware County District Attorney's Office Drug Task Force consent form. Upon receipt of the form, Sgt. Chambers observed numerous text messages in Link's cell phone that were consistent with drug sales/trafficking. Link advised police that "C's" cell phone number was 484-667-7880. Police also observed that there was a listing on Link's phone labeled "C" with the phone number 484-667-7880.

The pills that were blue in color, round pills stamped "N215". Detective Goodman identified the pills as oxycodone hydrochloride 30 mg., a Schedule II narcotic substance. Detective Goodman has in the past seized similar pills that have been sent to PSP Lab analysis and had determined the same to be oxycodone hydrochloride (30 mg) pills. The oxycodone and the alprazolam were submitted to PSP/Lima for testing.

On March 13, 2013 at approximately 2 p.m., Detective Goodman and Sgt. Chambers responded to the Sunoco at 400 East Township Line Road and spoke with the manager, Steve Coffin. Coffin advised police that he had surveillance video of a black male who exited the gold Lincoln Continental that was a suspect in the ongoing drug investigation. The black male was identified as "C" by the drug purchaser, Link[,] the day before. Detective Goodman and Sgt. Chambers observed the video and observed a black male exit the gold Lincoln Continental and entered the Sunoco store [*sic*]. Police observed the black male wearing a grey hoodie and a brown and tan vest. Detective Goodman immediately recognized the black male as the same subject that sold Link . . . one hundred oxycodone hydrochloride pills on

---

4     **Miranda v. Arizona**, 384 U.S. 436 (1966).

5     Officer Reynolds' first name is not available in the record.

[March 12, 2013] at 400 East Township Line Road, Havertown, Delaware County, PA. Police obtained a copy of the video. The officers obtained information that the black male suspect was living/dealing in the area of State and Lansdowne Roads in Upper Darby, PA. Detective Goodman and Sgt. Chambers conducted surveillance in the area and at approximately 3:37 p.m. Detective Goodman and Sgt. Chambers observed the suspect black male known to Detective Goodman as "C" operating the gold Lincoln Continental with PA registration JDX-1681 travel southbound on Lansdowne Road. Upon observing the operator, later identified as Carl Love[,] Jr., Detective Goodman immediately recognized the actor as the subject who conducted the hand to hand transaction with Robert Link on [March 12, 2013] at 400 East Township Line Road.

Police proceeded to follow Love and observed him enter the Exxon gas station at 1892 S. State Road, Upper Darby, Delaware County, PA 19082. Love parked his vehicle on the side of the gas station and entered the store on foot. Police observed that Love was wearing the exact same clothes as he did on [March 12, 2013] at the Sunoco. Sgt. Chambers and Detective Goodman stationed themselves outside the Exxon. Love exited the store and police identified themselves and advised Love to get on the ground numerous times. Love did not comply and was taken to the ground by police. Love was taken into custody for Possession with the Intent to Deliver. In a search incident to arrest the police discovered the following items on Love's person: $2692.00 US currency; three . . . oxycodone hydrochloride pills contained in [a] white plastic bottle labeled Advil; one . . . iPhone with number 484-667-7880; one . . . marijuana cigarette located in a cigarette box; one . . . grey hoodie; and one . . . brown and tan vest. This incident occurred within 1000 feet of a school zone.

The oxycodone pills were consistent with the pills seized from Robert Link on [March 12, 2013]. The pills were blue in color, round pills stamped "N/215". The pills and the suspected marijuana were submitted to PSP/Lima for testing. Police dialed phone number 484-667-7880 and the iPhone that was in [Love's] possession . . . at the time of his arrest rang. This was the phone number observed by police on Link's phone and was also the number Link advised police was the phone number of his oxycodone hydrochloride supplier, known as "C."

Trial Court Opinion ("T.C.O."), 5/30/2014, at 1-5.

On December 4, 2013, following a jury trial, Love was convicted of the above-mentioned crimes. On February 4, 2014, the trial court sentenced Love to not less than seven nor more than twenty years' imprisonment for the first PWID conviction, with an additional two to twenty years' imprisonment to be served concurrently for the second PWID conviction.[6] On February 12, 2014, Love timely filed a post-sentence motion, which the trial court denied on February 19, 2014.

On March 19, 2014, Love timely filed a notice of appeal. On March 20, 2014, the trial court ordered Love to submit a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On April 8, 2014, Love timely filed his statement. On May 30, 2014, the trial court filed its opinion pursuant to Pa.R.A.P. 1925(a).

Love raises the following questions for our review:

I.    Whether the evidence was insufficient to establish the elements of possession with intent to deliver regarding the conviction arising from the incident occurring March 31, 2013 when Mr. Love was found in possession of three oxycodone pills[?]

II.   Whether the court erred in denying defense counsel's requested jury instruction regarding the treatment of inconsistent statements (Standard Instruction 4.08) which were made by [Detective] Goodman and established through cross-examination[?]

---

[6]    The trial court concluded that the simple possession conviction merged with the PWID charges for sentencing purposes.

Brief for Love at 7.

In his first issue, Love argues that the Commonwealth did not provide sufficient evidence to prove beyond a reasonable doubt that Love had the requisite intent to deliver the oxycodone pills. *See* Brief for Love at 11. We disagree.

When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Duncan*, 932 A.2d 226, 231 (Pa. Super. 2007) (citation omitted). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id*. (quoting *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa. Super. 2005)). However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. *Id*. Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. *Id*. The burden of proving a person guilty of PWID beyond a reasonable doubt rests with the Commonwealth. *Commonwealth v. Drummond*, 775 A.2d 849, 854 (Pa. Super. 2001). The finder of fact is free to believe some, all, or

none of the evidence presented. ***Commonwealth v. Hartle***, 894 A.2d 800, 804 (Pa. Super. 2006).

In order to establish the offense of PWID, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it. ***Commonwealth v. Conaway***, 791 A.2d 359, 362 (Pa. Super. 2002). "The trier of fact may infer that the defendant intended to deliver a controlled substance from an examination of the facts and circumstances surrounding the case." ***Commonwealth v. Kirkland***, 831 A.2d 607, 611 (Pa. Super. 2003). "Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant." ***Id.***

Love claims that, based upon his possession of oxycodone pills, the evidence presented was insufficient to draw the inference that he possessed the pills with the intent to distribute them. ***See*** Brief for Love at 12, 16. Love asserts that the Commonwealth's expert witness, Lieutenant Michael Boudwin, reached his opinion by relying upon Love's prior drug transactions, instead of the surrounding circumstances at the time of the arrest. ***Id.*** at 13. Furthermore, Love argues that, on cross-examination, the expert conceded that Love could have possessed the pills for personal use. ***Id.*** at 14. Love contends that the aforementioned evidence does not establish beyond a reasonable doubt that he possessed the pills with the intent to

distribute them. *Id.* at 16. Therefore, Love argues that this Court should reverse his conviction for possession with intent to deliver. *Id.*

The Commonwealth counters that the evidence presented at trial establishes the elements of PWID beyond a reasonable doubt. *See* Brief for Commonwealth at 11. At trial, Detective Goodman testified that he witnessed Love sell one hundred oxycodone pills. Notes of Testimony ("N.T."), 12/4/2013, at 38-39, 50. The following day, Detective Goodman arrested Love and found $2600.00 in his pocket along with incriminating text messages in his cellphone. *Id.* at 59, 60-61, 64-65. The Commonwealth's expert, Lieutenant Michael Boudwin, provided testimony that Love was a mid-level drug dealer and that, at the time of the arrest, he possessed three oxycodone pills with the intent to deliver them to another person. *Id.* at 173. Therefore, the Commonwealth argues that the evidence presented at trial proves Love's guilt beyond a reasonable doubt for the crime of PWID. *See* Brief for Commonwealth at 13.

In analyzing the facts presented, it is clear that the Commonwealth has satisfied its burden in proving beyond a reasonable doubt that Love possessed the oxycodone pills with the intent to deliver them. On March 12, 2013, the day before the arrest, Detective Goodman witnessed Love deliver one hundred oxycodone pills. T.C.O. at 11; *see also* N.T., 12/4/2013, at 59, 60-61, 64-65. On March 13, 2013, during a search incident to arrest, Detective Goodman discovered incriminating evidence on Love's person,

including $2692.00, three oxycodone pills, and an iPhone that contained incriminating text messages. Furthermore, expert witness Lieutenant Boudwin testified that Love possessed three oxycodone pills with the intent to deliver them to another person. N.T., 12/4/2013, at 173. The jury was free to consider all facts and circumstances surrounding the possession, including Love's drug transaction that took place a day before the arrest. This evidence leads to the logical inference that Love possessed the oxycodone pills with the intent to deliver them. The jury found the incriminating evidence on Love's person the day of the arrest, and the expert testimony of Lieutenant Boudwin to be credible. Based upon the foregoing, we conclude that the evidence, viewed in the light most favorable to the Commonwealth, is sufficient to sustain Love's PWID conviction.

In his second issue, Love challenges the trial court's decision to deny his requested jury instruction regarding the treatment of allegedly inconsistent statements made by Detective Goodman. *See* Brief for Love at 17 (citing Pa. SSJI (Crim) 4.08A). Love argues that, during cross-examination, Detective Goodman acknowledged testifying differently at the preliminary hearing. *Id.* In Love's Pa.R.A.P. 1925(b) statement, Love refers to the inconsistent statements as those "which were made by Officer Goodman and established through cross-examination." *See* Rule 1925(b) statement, 4/8/2014, at III. This challenge is waived.

According to Pennsylvania Rule of Appellate Procedure 1925(b), the statement of errors complained of on appeal should "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal." *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Allhouse*, 969 A.2d 1236, 1239 (Pa. Super. 2009). Therefore, a "Pa.R.A.P. 1925(b) statement which is too vague to allow the court to identify the precise issue raised on appeal is equivalent to no statement at all." *Commonwealth v. Thompson*, 778 A.2d 1215, 1224, (Pa. Super. 2001). Issues not properly included in the Rule 1925(b) Statement are waived. Pa.R.A.P. 1925(b)(4)(vii).

In this case, Love did not specify in his Pa.R.A.P. 1925(b) statement which testimony established the alleged inconsistency. Instead, Love made vague reference to statements "which were made by Officer Goodman and established through cross-examination." *See* Rule 1925(b) statement, 4/8/2014, at III; *see also* T.C.O. at 12. Without any specific evidence to reevaluate, the trial court determined that the evidence provided at trial did not warrant the charge. *See Allhouse*, 969 A.2d at 1239; T.C.O. at 12.

Therefore, because Love's counsel did not properly preserve this issue in the Rule 1925(b) Statement, the challenge is waived.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2015