**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONALD WASHINGTON | |
| Appellant | No. 1196 EDA 2017 |

Appeal from the Judgment of Sentence Entered March 6, 2017
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0002712-2016

BEFORE:  PANELLA, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:               **FILED FEBRUARY 12, 2018**

Appellant, Ronald Washington, appeals from the March 6, 2017 judgment of sentence imposing two to four years of incarceration followed by one year of probation for possession with intent to deliver a controlled substance ("PWID"), possession of a controlled substance, and possession of drug paraphernalia.  We affirm.

The trial court recited the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> On February 24, 2016, Officer Matthew Donohue, a police officer for the City of Chester, in Delaware County, Pennsylvania, was on duty and in the Chester Police Station.  Officer Donohue had been in the Chester Police Department for six (6) years, three (3) of which were in the Narcotics Division.  Prior thereto, he was a police officer in Norwood Borough, Delaware County, PA.  In his

---

[*] Retired Senior Judge assigned to the Superior Court.

capacity as a narcotics officer he has been involved in approximately 250 drug investigations.

At approximately 2:40 p.m. on that date he received a call from a confidential informant (hereinafter referred to as "CI") about a black male in the area of 10th and Upland Streets in Chester wearing a black jacket and black pants selling crack cocaine. The call was from a paid informant whom the officer has used at least 15 times in the past in connection with the preparation of search warrants which were approved by a District Justice and where the informant was deemed by the witness as being reliable in the past. The confidential informant further stated to the witness that the person "…wasn't stashing the narcotics. He had the narcotics on him."

After receiving that telephone call Officer Donohue and Officer Mack, a Chester narcotics officer in training, left the police station and drove to the area of 10th and Upland Streets where they observed the Appellant fitting the description provided by the confidential informant, that being a black male wearing a black jacket and black pants. The police officers exited their vehicle and walked up to Appellant who immediately with both hands grabbed the closed front pouch of his jacket. He then took his hands of the pouch and immediately started shaking. Officer Donohue patted him down in the area of his waist and the front pouch pocket for weapons. Although the officer felt no weapons, based on his training and experience what he felt in the front pouch pocket appeared to him to be packaged narcotics. The officer then unzipped the pocket, reached in and retrieved a clear sandwich bag containing 34 smaller bags with suspected crack cocaine which filed tested positive and subsequently confirmed as such at the state police crime lab. Also seized from the Appellant was $124 in U.S. currency and a cell phone. At that point, the Appellant was arrested and taken to the Chester police station for processing.

Trial Court Opinion, 7/5/17, at 2-3 (record citations omitted).

Prior to trial, Appellant filed a motion to suppress the evidence police retrieved from him during the stop and frisk. The trial court denied the motion by order of October 18, 2016. Appellant proceeded to a February 2, 2017

- 2 -

non-jury trial, at the conclusion of which the trial court found Appellant guilty of the aforementioned offenses. Appellant filed this timely appeal following the imposition of sentence. He presents two questions:

> 1. Whether the lower court erred when it refused to suppress the fruits of an illegal stop and frisk of Appellant where the stop occurred without reasonable suspicion that criminal activity was afoot and the frisk was conducted without reasonable suspicion that he was armed and dangerous?
>
> 2. Whether the trial court erred in admitting out of court statements allegedly made by a confidential informant, through the testimony of Officer Donohue, since no exceptions to the hearsay rule apply?

Appellant's Brief at 5.

We review a challenge to an order denying suppression of evidence as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Baker*, 24 A.3d 1006, 1015 (Pa. Super. 2011) (internal citations and quotation marks omitted). Our scope of review is limited to the record of the suppression hearing. *In re L.J.* ,79 A.3d 1073, 1087 (Pa. 2013).

Appellant argues that police did not have reasonable suspicion for their investigative detention of Appellant because the CI's tip lacked sufficient indicia of reliability and because police failed to corroborate it before stopping Appellant. Appellant's Brief at 17-18. Appellant argues the Commonwealth failed to establish the CI's veracity. Appellant also argues that Officer Donohue's frisk of Appellant was unlawful. Appellant bases his arguments on a discrepancy between Officer Donohue's preliminary hearing testimony and his testimony at the suppression hearing.[1] Specifically, Officer Donohue did not state at the preliminary hearing that he had relied on this CI in the past. Appellant's argument ignores the standard of review, which requires us to consider the Commonwealth's evidence and only so much of Appellant's evidence as remains uncontradicted.

The record supports the trial court's findings, summarized above, that Officer Donohue had relied on this CI on fifteen prior occasions. In Officer Donohue's experience, the CI's information had proven reliable. N.T. Hearing, 8/23/16, at 13. The record also supports the trial court's findings that Officer Donohue found Appellant at the specified location (a high-crime area) and

---

[1] The preliminary hearing transcript was introduced as an exhibit during the suppression hearing and therefore is appropriately before us under *L.J.*

- 4 -

matching the description provided by the CI. The CI informed police that Appellant had contraband on his person, and Appellant reached for his pocket and began shaking at the sight of approaching police officers. The trial court provided a thorough analysis of its ruling in its order of October 18, 2016 and in its opinion of July 5, 2017.[2] We agree with the trial court's conclusion that police had reasonable suspicion in support of the stop and frisk and we reject Appellant's argument based on the trial court's order and opinion.

In his second argument, Appellant claims the trial court erred in permitting Officer Donohue to testify about statements the CI made to him. As the trial court correctly notes, Pennsylvania courts permit hearsay accounts of a CI tip in order to explain a police officer's course of conduct in conducting their investigation. *Commonwealth v. Chmiel*, 889 A.2d 510, 532-33 (Pa. 2005); *Commonwealth v. Estep*, 17 A.3d 939, 944-46 (Pa. Super. 2011). We reject Appellant's second argument based on the trial court's July 5, 2017 opinion. Further, we direct that copies of the trial court's July 5, 2017 opinion (with the October 18, 2016 findings of fact and conclusions of law attached as an exhibit) be filed along with this memorandum.

Judgment of sentence affirmed.

---

[2] The trial court attached its October 18, 2016 order, including the findings of fact and conclusions of law, as Exhibit A to its July 5, 2017 opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/12/18



IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| COMMONWEALTH OF PENNSYLVANIA | 1196 EDA 2017 |
| --- | --- |
| v. | CP-23-CR-0002712-2016 |
| RONALD WASHINGTON | |

John F.X. Reilly, Esquire, Deputy District Attorney for the Commonwealth
Steven M. Papi, Esquire, Assistant Public Defender for the Appellant

## OPINION

NILON, J.                                                                          FILED: 7/5/17


After a non-jury trial which took place on February 2, 2017, Ronald Washington, hereinafter "Appellant" was found guilty of Possession with Intent to Deliver-Cocaine[1], Possession of a Controlled Substance-Cocaine[2], and Possession of Drug Paraphernalia.[3] On March 6, 2017, the court sentenced the Appellant to an aggregate sentence of two (2) to four (4) years in a state correctional institution plus one (1) year of consecutive state probation. Appellant filed an appeal raising three (3) issues, namely: the constitutionality of the stop, search, and seizure of evidence; the admission at trial of certain statements made by a confidential informant through the testimony of the arresting police officer; and the sufficiency of the evidence to convict the Appellant of the charge of possession with intent to deliver a controlled substance. The court concludes that the evidence was legally obtained from Appellant; there was no error in admitting the statements of the confidential informant; and sufficient evidence was presented to support the conviction of possession with intent to deliver a

---

[1] 35 P.S. 780-113(a)30
[2] 35 P.S. 780-113(a)16
[3] 35 P.S. 780-113(a)32

1

controlled substance. Appellant is not entitled to any relief and the judgment of sentence should be affirmed.

## FACTUAL HISTORY:

This is an appeal from this Court's Judgment of Sentence imposed on March 6, 2017. The nature and history of the case are as follows:

On February 24, 2016, Officer Matthew Donohue, a police officer for the City of Chester, in Delaware County, Pennsylvania, was on duty and in the Chester Police Station. Officer Donohue had been in the Chester Police Department for six (6) years, three (3) of which were in the Narcotics Division. (N.T. 8/23/16 p.10). Prior thereto, he was a police officer in Norwood Borough, Delaware County, PA. (N.T. 8/23/16 p.11). In his capacity as a narcotics officer he has been involved in approximately 250 drug investigations.

At approximately 2:40 p.m. on that date he received a call from a confidential informant (hereinafter referred to as a "CI") about a black male in the area of 10th and Upland Streets in Chester wearing a black jacket and black pants selling crack cocaine. The call was from a paid informant whom the officer has used at least 15 times in the past in connection with the preparation of search warrants which were approved by a District Justice and where the informant was deemed by the witness as being reliable in the past. (N.T. 8/23/16 p. 13-14). The confidential informant further stated to the witness that the person "...wasn't stashing the narcotics. He had the narcotics on him." (N.T. 8/23/16 p. 14).

After receiving that telephone call Officer Donohue and Officer Mack, a Chester narcotics officer in training, left the police station and drove to the area of 10th and Upland Streets where they observed the Appellant fitting the description provided by the confidential informant, that being a black male wearing a black jacket and black pants. (N.T. 8/23/16 pp. 16-

2

17). The police officers exited their vehicle and walked up to Appellant who immediately with both hands grabbed the closed front pouch of his jacket. He then took his hands off the pouch and immediately started shaking. (N.T. 8/23/17 pp. 17-18). Officer Donohue patted him down in the area of his waist and the front pouch pocket for weapons. Although the officer felt no weapons, based on his training and experience what he felt in the front pouch pocket appeared to him to be packaged narcotics. (N.T. 8/23/16 pp. 18-19). The officer then unzipped the pocket, reached in and retrieved a clear sandwich bag containing 34 smaller bags with suspected crack cocaine which field tested positive and subsequently confirmed as such at the state police crime lab. Also seized from the Appellant was $124 in U.S. currency and a cell phone (N.T. 8/23/16 p.21). At that point, the Appellant was arrested and taken to the Chester police station for processing.

## PROCEDURAL HISTORY:

On March 6, 2017, the court sentenced the Appellant. On April 4, 2017, Appellant filed a timely Notice of Appeal. Consequently, pursuant to Pa.R.A.P. 1925(b), the Court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal. On April 27, 2017, Appellant filed a Concise Statement raising the following issues for appellate review:

1. The court erred in refusing to suppress the fruits of the illegal stop and search at issue herein, which were conducted without legal justification, and in violation of the rights guaranteed to Mr. Washington by the Fourth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 8 of the Pennsylvania Constitution. The stop occurred without reasonable suspicion that criminal activity was afoot, and the frisk was conducted without a reasonable belief that he may have been armed and dangerous.

2. The court erred in admitting out of court statements allegedly made by a confidential informant, through the testimony of Officer Donahue, since no exceptions to the hearsay rule applied.

3

3. The evidence is insufficient to sustain the conviction for possession of a controlled substance with intent to deliver since the Commonwealth failed to prove, beyond a reasonable doubt, that Mr. Washington possessed crack cocaine with the intent to distribute or sell it.

## DISCUSSION:

### 1. MOTION TO SUPPRESS

Appellant's first issue raised on appeal presents a challenge to this court's order denying his Suppression Motion. On August 23, 2016, a hearing was held on the Omnibus Motion. After a review of the evidence, testimony, argument presented at the hearing, and the Memoranda of Law submitted by the parties, the Appellant's Omnibus Motion was denied on October 18, 2016. This court issued extensive Findings of Fact and Conclusions of Law that offer a complete basis upon which the appellate courts can conduct review. The Order and the Findings of Fact and Conclusions of Law are hereby adopted by this court, incorporated by reference, and made a part of this Opinion. (See Detailed Factual Findings attached hereto as "Exhibit A").

### 2. HEARSAY

The second issue raised by the Appellant for appellate review presents a challenge to the admission of out-of-court statements made by a confidential informant, admitted through the testimony of Officer Donahue, alleging the statements were inadmissible hearsay. The Officer testified that he arrived at a particular location based upon information from a CI.

Appellant's specific complaints concern Officer Donahue's testimony at the non-jury trial as to those statements made to him by the CI which the trial court admitted for the purpose

4

of explaining the predicate for Donahue's investigation. These statements—consisting of the report that he was selling narcotics-specifically crack cocaine, a description of him, and of his location -it is argued, are inadmissible hearsay, since no exceptions to the hearsay rule applied. The Officer's testimony was as follows:

Q. Did you have the occasion on that time and date to respond to the area of East 10th St. and the intersection of Upland Avenue?
A. Yes.
Q. Is that in Delaware County?
A. It is.
Q. Would you tell the court the circumstances preceding your arrival in that area?

> Mr. Sheridan [Defense counsel]: I'm going to object. The question calls for hearsay Your Honor. I do have case law if your Honor would like to take a look at it regarding the admittance of these types of statements.
> THE COURT: Well, I am not exactly sure I understand the question.
> Mr. Flowers[ADA]: I'm just asking--the question was is why did he respond to that area.
> THE COURT: Okay.
> Mr. Sheridan: And that question calls for hearsay.
> THE COURT: Well, it could be but we don't have a jury present.
> Mr. Sheridan: I understand.
> THE COURT: And if it is hearsay, I will disregard it.
> Mr. Flowers: Well and I would submit judge that it is not even being offered for the truth of the matter asserted. It is just being offered for the fact that this is what was told to him and the real matter and why it is being offered because this is why he went there.
> ...
> THE COURT: he can give the reason that he responded to the scene. If it-- I mean if it constitutes hearsay testimony, I am not going to give it any weight in determining the guilt or innocence of the Defendant.
> Mr. Sheridan: Okay.

Q.: You can answer. Why did you arrive on scene?
A. I received information from a confidential informant about a male in the area of 10th and Upland wearing a black jacket and black pants selling narcotics, specifically crack cocaine.

(N.T. 2/2/17 pp. 13-14).

5

When reviewing a challenge to the admissibility of evidence, the Pennsylvania Supreme court has noted that "[t]he admissibility of evidence rests within the sound discretion of the trial court, and such a decision will be reversed only upon a showing that the trial court abused its discretion." *Commonwealth v. Boczkowski*, 577 Pa. 421, 451, 846 A.2d 75, 93 (Pa.2004). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Carter*, 861 A.2d 957 (Pa. Super.2004) *(en banc)*.

"Hearsay is defined as 'a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *Commonwealth v. Cunningham*, 805 A.2d 566, 572 (Pa.Super.2002), *appeal denied*, 573 Pa. 663, 820 A.2d 703 (2003), citing Pa.R.E. 801(c). "Hearsay testimony is *per se* inadmissible in this Commonwealth, except as provided in the Pennsylvania Rules of Evidence[,] by other rules prescribed by the Pennsylvania Supreme Court, or by statute." *Id.*

When an out-of-court statement is offered to prove that the statement was made, and not that the content of the statement is true, the statement is not hearsay. For example, at a suppression hearing the affiant to a search warrant may testify concerning what an informant told him when the affiant based the warrant request on that information. Such testimony is offered to prove not the truth of what the informant said, but that the informant said it. *Commonwealth v. Chmiel*, 889 A.2d 501, 532-33 (Pa. 2005). **"Similarly, a police officer may testify that he received information from a confidential informant, when the testimony is offered not to prove the truth of the statement, but to explain the course of conduct taken by police as a**

6

**result of the statement's having been made.**" 16B West's Pa. Prac., Criminal Practice § 29:18; *Commonwealth v. Chmiel*, 889 A.2d 501, 532-33 (Pa. 2005).

It is well-established that certain out-of-court statements offered to explain the course of police conduct are admissible on the basis that they are offered not for the truth of the matter asserted, but rather to show the information upon which the police acted. *Commonwealth v. Jones*, 540 Pa. 442, 451–52, 658 A.2d 746, 751 (1995); *Commonwealth v. Yates*, 531 Pa. 373, 375–76, 613 A.2d 542, 543 (1992); *Commonwealth v. Palsa*, 521 Pa. 113, 117, 555 A.2d 808, 810 (1989). *Commonwealth v. Smith*, 378 A.2d 1015, 1017 (1977) (stating trooper's testimony in bookmaking prosecution, concerning informant's statement that trooper could place bets by calling specific telephone number, was not hearsay, as it was offered to explain trooper's subsequent actions; statement was not offered to show it was true, but only that it was said).

In a case strikingly similar to the case *sub judice*, the Superior Court held in *Commonwealth v. Estepp*, 17 A.3d 939, 944–46 (Pa.Super.2011) that the Appellant's claim that he was unfairly prejudiced when the trial court allowed the Police Officer to testify to "the out-of-court statement of a confidential informant who informed police that a 50–year–old white male named "Vern" sold prescription drugs out of his residence on 2828 Agate Street." *Estepp*, p.944-45. The Appellant asserted that this testimony was inadmissible hearsay that the Commonwealth offered as substantive evidence of guilt to convince the jury that Appellant had a criminal propensity to sell drugs. The Commonwealth claimed the testimony was offered for the sole purpose of establishing the Officer's course of conduct in investigating these allegations. *Id.* The Court opined:

> As a general rule, hearsay is inadmissible as such evidence lacks guarantees of trustworthiness fundamental to the Anglo–American system of jurisprudence. *Commonwealth v. Dargan*, 897 A.2d 496, 500 (Pa.Super.2006) (citations omitted).

7

However, "an out-of-court statement offered not for its truth but to explain the witness's course of conduct is not hearsay" and thus, is not excludable under the hearsay rule. *Commonwealth v. Rega*, 593 Pa. 659, 693, 933 A.2d 997, 1017 (2007) (citation omitted). This Court addressed a factual similar situation in *Dargan* where the trial court allowed an investigating officer to testify to the out-of-court statements of a confidential informant for the limited purpose of explaining the officer's course of conduct. *Dargan*, 897 A.2d at 502. The officer testified that his confidential informant gave him a tip that an African–American male named "Oc" was selling heroin out of his home in Old Forge. *Id.* at 498–99. The informant gave police a description of "Oc" and his vehicle, the location where Oc lived, and his license plate number. *Id.* This Court refused to find error as the trial court admitted the statements with specific instructions for the jury to consider the evidence for a particular purpose. *Id.* at 502.

*Commonwealth v. Estepp*, 2011 53, 17 A.3d 939, 944–46 (Pa.Super. 2011).

In the case *sub judice*, with regard to the background information provided to the police by the confidential informant, such information is clearly admissible to establish the course of conduct on the part of the police. Similar challenges to the admission of such evidence have been unsuccessful when used for this limited purpose. *See, e.g., Commonwealth v. Estepp*, 17 A.3d 939 (Pa. Super 2011); *Commonwealth v. Dargan*, 897 A.2d 496, 500 (Pa.Super. 2006). Although there was no limiting instruction given in this case, none was necessary as this was a non-jury trial and the court provided assurances: "I am not going to give it any weight in determining the guilt or innocence of the Defendant" (N.T. 2/2/17 p.14). In light of the very limited nature of the question posed by the Commonwealth and the timely objection thereto, there was no abuse of discretion in admitting this testimony, and Appellant's claim that the statements were improperly admitted has no arguable merit.

## 3. SUFFICIENCY OF THE EVIDENCE

### The Evidence Was Sufficient to Support the Verdict

The third issue raised by the Appellant for appellate review presents a challenge to the sufficiency of the evidence. Specifically, he challenges the verdict of guilty beyond a reasonable doubt relating to the charge of Possession of a Controlled Substance with Intent to Deliver–Cocaine.

8

## A. Standards governing sufficiency of the evidence

A claim challenging the sufficiency of the evidence is a question of law. *Commonwealth v. Strouse*, 2006 Pa. Super. 273, 909 A.2d 368 (2006); *Commonwealth v. Dale*, 2003 Pa. Super. 413, 836 A.2d 150 (2003). When reviewing a challenge to the sufficiency of the evidence to support a conviction, the court must determine whether the evidence was sufficient to enable the trier of fact to find every material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt, viewing the evidence and the reasonable inferences therefrom in the light most favorable to the Commonwealth, as the verdict winner. *Commonwealth v. Strouse, supra; Commonwealth v. Dale, supra.* (See also *Commonwealth v. McCloskey*, 2003 Pa. Super. 409, 835 A.2d 801 (2003); *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000).

Furthermore, the Commonwealth may sustain its burden by proving the elements of the offense with evidence which is entirely circumstantial and the trier of fact, who determines credibility of witnesses and the weight to give evidence produced, is free to believe all, part, or none of the evidence. *Commonwealth v. Jette*, 818 A.2d 533, 534 (Pa. Super. 2003).

The Superior Court may not substitute its judgment for that of the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910 (Pa. Super. 2000). If the fact finder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed to support the verdict. *Commonwealth v. Wood*, 432 Pa. Super. 183, 637 A.2d 1335 (1994). The standard applies equally to cases in which the evidence is circumstantial, rather than direct, as long as the evidence as a whole links the accused to the crime charged beyond a reasonable doubt. *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101 (1988); *Commonwealth v. Swerdlow*, 431 Pa. Super. 453, 636 A.2d 1173 (1994).

9

Additionally, mere conflicts in the testimony of the witnesses do not render the evidence insufficient. *Commonwealth v. Moore*, 436 Pa. Super. 495, 648 A.2d 331 (1994). Issues of credibility are left to the finder of fact, who is free to accept all, part, or none of a witness's testimony. *Commonwealth v. Johnson*, 542 Pa. 384, 668 A.2d 97 (1995); *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548 (1992); *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621 (1995); *Commonwealth v. Kelley*, 444 Pa. Super. 377, 664 A.2d 123 (1995); *Commonwealth v. Lytle*, 444 Pa. Super. 126, 663 A.2d 707 (1995). Questions of doubt are for the finder of fact, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the totality of the circumstances. *Commonwealth v. Cassidy*, 447 Pa. Super. 192, 668 A.2d 1143 (1995); *Commonwealth v. Govens*, 429 Pa. Super. 464, 488, 632 A.2d 1316 (1993), *alloc. den.*, 539 Pa. 675, 652 A.2d 1321 (1994). Only when the evidence offered to support the verdict is in contradiction to the physical facts, or in contravention to human experience and the laws of nature, can the evidence be considered insufficient as a matter of law. *Commonwealth v. Widmer, supra.*

## B. The Evidence Was Sufficient to Support Appellant's Conviction For Possession of a Controlled Substance With Intent to Deliver

The court, in viewing the evidence and the reasonable inferences therefrom, in the light most favorable to the Commonwealth as verdict winner, determines that the Commonwealth established all the elements of the crime beyond a reasonable doubt and finds that there was sufficient evidence presented at trial to support Appellant's conviction for Possession of a Controlled Substance With Intent to Deliver-Cocaine.

The elements of the crime of Possession of a Controlled Substance With Intent to Deliver are as follows:

10

35 Pa.C.S. Section 780-113(a): The following acts and causing thereof within the Commonwealth are hereby prohibited:

(30). Except as authorized by this act, the manufacture, delivery, or possession with the intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

Under the standard described above, the evidence was sufficient to establish that Appellant was guilty of possessing a controlled substance with intent to deliver. The term possession is defined as the ability to exercise dominion and control over an area or object, and the possession may be actual or constructive. *Commonwealth v. Aviles*, 615 A.2d 398 (Pa. Super. 1992). Constructive possession is a legal fiction created to deal with the realities of criminal law enforcement; it is an inference arising from a set of facts that the possession of contraband was more likely than not. *Id.* The Commonwealth may prove constructive possession by circumstantial evidence. *Commonwealth v. Gladden*, 665 A.2d 1201, 1207 (Pa. Super. 1995). Individually, each circumstance may not be decisive, but the totality of the circumstances may justify an inference that the accused had both the power to control and the intent to exercise that control. *Id.* Constructive possession may be established by the totality of the circumstances that demonstrate the defendant exercised dominion and control over the controlled substance. *Aviles*, 419 Pa.Super. at 352, 615 A.2d at 402 (citing *Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132 (1983); *Commonwealth v. Fortune*, 456 Pa. 365, 318 A.2d 327 (1974)).

The court notes that all facts and circumstances surrounding the possession are relevant in making the determination of whether the controlled substance was possessed with the intent to deliver or was possessed for personal use. *Commonwealth v. Sherrell*, 414 Pa. Super. 477, 481-482, 607 A.2d 767, 769 (1992). Intent to deliver may be inferred from possession of a large

11

quantity of a controlled substance alone. *Commonwealth v. Jackson*, 435 Pa. Super. 410, 413, 645 A.2d 1366, 1368 (1994). Other factors to consider in determining intent to deliver are the manner in which the substance was packaged, a Defendant's presence at the location where drugs are discovered, the presence of drug paraphernalia, and large sums of cash in the possession of the defendant. *Id.* See *Commonwealth v. Parsons*, 570 A.2d 1328 (Pa. Super. 1990), *citing Commonwealth v. Harris*, 397 A.2d 424 (Pa. Super. 1979). Expert testimony is admissible concerning whether the facts surrounding the possession were consistent with intent to deliver rather than personal use. *Id.*; *Sherrell*, 607A.2d at 769.

In the case *sub judice*, at trial, the Commonwealth called Officer Timothy W. Garron, who was employed by the City of Chester Police Department in the Narcotics Unit for 4 years while simultaneously being assigned as a full-time member of the FBI's Delaware Valley Violent Crime Task Force also for four years, to testify as an expert and render an opinion as to whether the drugs possessed by the Appellant were possessed for personal use or with the intent to deliver. In addition to his FBI assignment, Officer Garron was also assigned to the Delaware County Narcotics Task Force working drug investigations for 4 years. He has extensive training in narcotics and experience in narcotics investigation.[4] Officer Garron testified, as an expert in the field of narcotics and narcotics trafficking. He testified that in his opinion Appellant was engaged in the offense of Possession with the Intent to Deliver and did not possess controlled substances for mere personal possession. (N.T. 2/2/17 p.95). "These 34 individual zip top bags of what was tested positive as cocaine were without a doubt possessed with intent to deliver." *Id.*

He based this determination upon all of the evidence in the case. He testified:

> These narcotics taking in the fact the amount, the amount it costs to purchase
> what he would have had in bulk, the amount that you would make off of it, the

---

[4] (N.T. 2/2/17 pp.89-91).

specific area in the City of Chester where this took place, it is undoubtedly possessed with intent to deliver.

(N.T. 2/2/17 p.102).

The Appellant was searched and had $124.00 in cash on his person at the time of his arrest and the denominations were six twenty-dollar bills. Officer Garron testified that this indicated "[t]o me it would be six sales at two bags apiece." (N.T. 2/2/17 p.99). When asked if a normal user or addict could use 34 bags in one day, the Officer responded "No they would die, absolutely not." (N.T. 2/2/17 p.102).

The Officer testified that the Appellant had approximately 3.5 grams which would essentially be considered an eight ball of cocaine. He opined:

> Currently in the City of Chester an eight ball, or 3.5 grams of cocaine, would be sold for approximately 150 to $175 depending on how well you know your dealer, things of that nature, how often you go to them if you were buying it at 3.5 grams. The intention there is to then take that 3.5 grams and break it down into the most common street-level sale, which street term slang would be a dime bag, but it would essentially be one zip top bag that contains 1/10 of a gram of cocaine. So essentially if you have 3.5 g and you break that down to a 10th of a gram each, you would have 35 bags of cocaine... These would be considered dime bags. ...[w]ith that being said, once all these individual servings are sold you would make a profit of $340, subtract 150 that you spent on the bulk purchase and you're-- you know you are doubling your money. That is why you do it...

(N.T. 2/2/17 pp. 96-97).

Based upon the Officer's credible testimony, the court was able to determine that Appellant was in Possession of a Controlled Substance with Intent to Deliver-Cocaine, in violation of 35 Pa.C.S. § 780-113(a)(30).

In light of the facts, this court finds that Appellant's allegation that the evidence was insufficient as a matter of law to support the conviction is meritless. While another fact-finder

13

may have reached a different result, the evidence was not insufficient as a matter of law and as such this appeal should be dismissed.

## CONCLUSION:

For the foregoing reasons, the Trial Court's Judgment of Sentence should be affirmed on appeal.

BY THE COURT:

_____
JAMES F. NILON, JR., J.

14

# EXHIBIT "A"

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   |   No.: CP-23-CR-2712-2016

                              |

           v.                      |

                              |

RONALD WASHINGTON           |

Chris Goldschmidt, Esquire; Assistant District Attorney for the Commonwealth
Hillary R. Sheridan, Esquire; Attorney for Defendant

### ORDER

AND NOW, this 18th day of October 2016, upon consideration of Defendant's "Motion to Suppress Physical Evidence," the Suppression Hearing held on August 23, 2016, the Memoranda submitted by both parties, all the evidence, and pertinent case law, it is hereby ORDERED AND DECREED that the Motion is DENIED. The Defendant's arrest was legal and all physical evidence seized at the time of Defendant's arrest shall be admissible at trial.

The Court finds as follows:

### I. FINDINGS OF FACT:

1. Ronald Washington, hereinafter "Defendant," was arrested and charged with Possession with Intent to Deliver-Cocaine[1], Possession of a Controlled Substance-Cocaine[2], and Possession of Drug Paraphernalia[3] on February 24, 2016 at approximately 2:50 p.m. by Officer Matthew Donohue of the Chester Police Department. The Defendant was arraigned in the Court of Common Pleas, Delaware County, Pennsylvania on June 1, 2016.

2. On August 9, 2016, Defendant, through counsel, filed a "Motion to Suppress Physical Evidence," seeking to suppress all physical evidence obtained as a result of the search of his person prior to the Defendant's arrest.

3. Defendant, through counsel, in his Motion to Suppress Evidence requests the suppression of the following items: (1) one clear sandwich bag found in Petitioner's jacket pocket; (2)

---

[1] 35 Pa.C.S. §780-113(a)(30).
[2] 35 Pa.C.S. §780-113(a)(16).
[3] 35 Pa.C.S. §780-113(a)(32).

thirty-four small red tinted Ziploc bags, located within the clear sandwich bag, found in Petitioner's jacket pocket; (3) crack Cocaine, located within each of thirty-four Ziploc bags, weighing a total of approximately 5.5 grams, found in Petitioner's jacket pocket; (4) cash in the amount of one hundred twenty-four dollars, found on Petitioner's person; and (5) one white Samsung cell phone, found on Petitioner's person. Defendant alleges that his stop and search were unlawful.

4. A Suppression Hearing was held on August 23, 2016. Officer Matthew Donohue, an Officer for six years for the City of Chester Police Department-three of which were with the narcotics division, testified at the Suppression Hearing. Officer Donohue had been a police officer with Norwood Borough Police Department for three years prior to joining the Chester Police Department. (N.T. 8/23/16 pp.10-12).

5. Officer Donohue testified that he was working February 24, 2016 when he received a phone call from "one of my paid confidential informants." (hereinafter referred to as "C.I.") at approximately 2:40 p.m. (N.T. 8/23/16 p. 13). The C.I. was used by Officer Donohue many times in the past, and had been involved "in at least 15 of my search warrants." which were approved by a Magisterial District Justice. In his experience, he was a reliable C.I. (N.T. 8/23/16 p. 13).

6. In the phone call, the C.I. provided information that there would be a Black male in the area of 10th and Upland Street in the City of Chester, PA with a black jacket and black pants walking around the area selling narcotics with narcotics on his person. (N.T. 8/23/16 pp. 13-14). The C.I. told Officer Donohue that the individual would be selling Crack Cocaine. (N.T. 8/23/16 p. 40).

7. After the phone conversation from the C.I., Officer Donohue went with Officer Mack from the station to the area of 10th and Upland Street. (N.T. 8/23/16 pp. 14-15). This is a high-drug, high crime area. When he arrived at the address, Officer Donohue noticed the Defendant, matching the C.I.'s description, walking west and stopping in front of a house to talk to another male. (N.T. 8/23/16 p. 16). The Defendant was wearing the exact same outfit as described by the C.I., a black jacket and black pants.

8. Officer Donohue exited his vehicle, with Officer Mack behind him, and walked up to the Defendant who grabbed his "kangaroo style pouch" as the officers approached. (N.T. 8/23/16 p. 17). The Officers at that point in time ordered the Defendant to not reach for his pouch. (N.T. 8/23/16 pp. 32-33). Officer Donohue, noticing the Defendant's nervous demeanor, shaking, and grabbing his pouch, proceeded to do a pat-down for weapons. (N.T. 8/23/16 pp. 33-34).

9. Officer Donohue proceeded to pat-down the Defendant with an open palm and immediately recognized, due to his training and experience, that inside the pouch were lumps indicating narcotics. (N.T. 8/23/16 pp. 35-37). The Officer did not manipulate the narcotics. The Officer testified that he felt crack Cocaine and not powder Cocaine so it had lumps he could feel in the pat-down. The officer testified: "[t]hey were what I knew to be packaged narcotics." (N.T. 8/23/16 p.37). Officer Donohue continued the pat-down

and then proceeded to open the zipper of the front pouch. (N.T. 8/23/16 pp. 38). Officer Donohue searched the front pouch and found a large sandwich bag with 34 small red-tinted Ziploc bags inside the pouch. (N.T. 8/23/16 pp. 20-21). The lab results for the suspected Crack Cocaine tested positively for Cocaine. (N.T. 8/23/16 pp. 21-22).


## II.  CONCLUSIONS OF LAW:

### A.  Motion to Suppress Physical Evidence

1. Under Article I, Section 8 of the Pennsylvania Constitution, a suspect is afforded a greater degree of protection against unlawful searches and seizures than is granted by the 4th Amendment of the United States Constitution. Commonwealth v. Matos, 672 A.2d 769, 771 (Pa. 1996).

2. In Commonwealth v. Boswell, 554 Pa. 275, 721 A.2d 336 (1998), our Supreme Court determined that interactions between police and citizens may be characterized as a "mere encounter," an "investigative detention," or a "custodial detention."

3. A "mere encounter," does not implicate the Fourth Amendment and requires no level of suspicion. *See* Commonwealth v. Bradley, 724 A.2d 351 (Pa.Super. 1999).

4. If the interaction rises to the level of an investigative detention, the police must possess reasonable suspicion that criminal activity is afoot. Commonwealth v. Jackson, 428 Pa. Super. 246, 249, 630 A.2d 1231, 1233 (1993).

5. In order to demonstrate reasonable suspicion, the police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of his or her experience. Jackson, 698 A.2d at 573.

6. To evaluate the level of suspicion possessed by an officer, the court must view the totality of the circumstances through the eyes of a trained officer. *See*, Commonwealth v. Riley, 715 A.2d 1131, 1135 (Pa. Super. 1998), appeal denied, 558 Pa. 617, 737 A.2d 741 (1999).

7. Probable cause exists if there are facts and circumstances within the police officer's knowledge that would warrant a person of reasonable caution to believe an offense has been committed. Commonwealth v. Myers, 728 A.2d 960, 962 (Pa. Super. 1999).

8. Credibility of an unnamed informant and the reliability of the CI's information may be established in one of two ways: (1) by the assertion that CI has given reliable information in the past, or (2) through independent police corroboration of the tip. *Jones*, 42 Pa. 418, 668 A.2d 114 (1995).

9. Under the totality of the circumstances test, a tip from a known and unnamed informant can properly form the basis for probable cause provided there is adequate evidence of the

informant's credibility and reliability of his/ her information. *Commonwealth v. Lemanski*, 529 a.2d 1085 (Pa. Super. 1987). That is, police corroboration is unnecessary when the informant's veracity has already been established through prior reliable tips. *Commonwealth v. Jones*, 42 Pa. 418, 668 A.2d 114 (1995), see also *Commonwealth v. Carlisle*, 501 A.2d 664 (Pa. Super. 1985); *Commonwealth v. Luv*, 735 A.2d 87 (1999).

10. In the case of Commonwealth v. Johnson, 849 A.2d 1236, (Pa. Super. 2004) the Superior Court held that a reliable CI's tip of a man arriving at a location with drugs provided reasonable suspicion for an investigatory detention.

11. A tip provided to police from a known informant may carry enough indicia of reliability for the police to conduct an investigatory detention. Adams v. Williams, 407 U.S. 143, 147 (1972); Commonwealth v. Brown, 996 A.2d 473, 479 (Pa. 2010); *See*, Commonwealth v. Luv, 735 A.2d 87, 90 (1999).

12. In the case of Commonwealth v. Foglia, 979 A.2d 357, 361 (Pa. Super. 2009) the Superior Court held that:
    > "[I]f a suspect makes hand movements that police know, based on their experience, are associated with the secreting of a weapon, those movements will buttress the legitimacy of a protective weapons search of the location where the hand movements occurred."
    > *Id.* at 361, *citing*, In the Interest of O.J., 958 A.2d 561 (Pa. Super. 2008) *(en banc)*.

13. The United States Supreme court in Illinois v. Wardlow, held that whether the defendant was in a high crime neighborhood is a relevant factor in supporting reasonable suspicion. Wardlow, 528 U.S. 119, 124 (2000).

14. Pennsylvania Courts have found it reasonable for officers to believe that a suspected drug dealer, selling in a high drug trafficking/high crime area, to be armed and dangerous. In the Interest of C.C., 780 A.2d 696, 699 (Pa. Super 2001); In the Interest of B.C., 683 A.2d 919 (Pa. Super. 1996); *See*, Commonwealth v. Lateef, 667 A.2d 1158, 1161 (Pa. Super 1995) (holding police officers may reasonably anticipate the possibility that the suspect may be armed and dangerous when suspects are allegedly in possession of narcotics).

15. During the course of a valid investigatory stop, an officer observes conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons. Terry v Ohio, 392 U.S. 1 (1968); In the Interest of S.J., 551 Pa. 637, 713 A.2d 45 (1999).

16. A Terry search may not go beyond what is necessary to determine if the suspect is armed. Sibron v. New York, 392 U.S. 40 (1968).

17. Our Supreme Court has held: "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger. The existence of reasonable suspicion to frisk an individual must be judged in light of the totality of the circumstances confronting the officer. *Commonwealth v. Taylor*, 771 A.2d 1261, 1268–1269 (Pa.2001).

18. The United States Supreme Court adopted the "plain-feel" doctrine holding that a police officer may seize non-threatening contraband detected through the officer's sense of touch during a Terry frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is "immediately apparent," and the officer has a lawful right of access to the object. Minnesota v. Dickerson, 508 U.S. 366 (1993).

19. An officer may seize non-threatening contraband detected through the officer's sense of touch during a protective frisk, provided the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression, and the officer has a lawful right of access to the object. This doctrine, the plain feel doctrine, is only applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent. *Commonwealth v. Stevenson*, 744 A.2d 1261, 1265 (2000).

20. Officer Donohue received a reliable tip from a known C.I. The C.I. has given reliable tips in the past, his identity was known, and the tip provided a description of the narcotics dealer that Officer Donohue was able identify through corroboration of the tip. These factors taken together, give an indicia of reliability that the tip was more reliable than not.

21. Officer Donohue acting on the tip sought to corroborate the tip even more when he encountered the Defendant on the street. The defendant made a sudden hand movement to his waist area leading Officer Donohue to believe that the Defendant may be armed and dangerous. Officer Donohue, noticing the Defendant's nervous demeanor, shaking, and grabbing his pouch, proceeded to do a pat-down for weapons. As the Officer testified: "I just said hey man, don't reach. He started shaking. I started talking to him. He was very nervous and I just patted him down for weapons." (N.T. 8/23/16 pp. 33-34). Officer Donohue then conducted an investigative detention.

22. Officer Donohue had reasonable suspicion to stop the Defendant and to conduct a search of the Defendant's body for weapons. The sudden hand movement, the high drug trafficking/high crime area where Defendant was located, the reliable tip from the C.I., along with Officer Donohue's experience taken together as a whole provided enough reasonable suspicion for Officer Donohue to not only stop the Defendant but also to search the Defendant for weapons.

23. Officer Donohue conducted a permissible search within the scope of the Fourth Amendment of the United States Constitution. Officer Donohue did a cursory search of

the outer garments of the Defendant with an open palm and thus did not exceed the scope of the search of the Defendant.

24. Officer Donohue proceeded to pat-down the Defendant with an open palm and immediately recognized, due to his training and experience, that inside the pouch were lumps indicating Crack-Cocaine. (N.T. 8/23/16 pp. 35-37). The Officer did not manipulate the narcotics. The Officer testified that he felt Crack Cocaine and not powder Cocaine; it had lumps he could feel in the pat-down. "You could feel them clumped up." (N.T. 8/23/16 p.36). The officer testified: "[t]hey were what I knew to be packaged narcotics." (N.T. 8/23/16 p.37).

25. Officer Donohue while conducting a Terry frisk was lawfully permitted to seize the contraband through the "plain-feel" doctrine. Officer Donohue was in a lawful position to search the Defendant, the lumps of crack-cocaine were immediately apparent to him due to his experience and the contours of the contraband, and Officer Donohue had a lawful right of access to seize the contraband. Thus the seizure of the evidence was lawfully obtained.

26. As such, the Defendant's Motion to Suppress Physical Evidence is **DENIED**.

WHEREFORE, Defendant's "Motion to Suppress Physical Evidence," is **DENIED**. The Defendant's arrest was legal and all physical evidence seized at the time of Defendant's arrest shall be admissible at trial.

A Trial in the above-captioned matter is scheduled for **November 21, 2016** at 9:00 A.M. in Courtroom 2.

BY THE COURT:

JAMES F. NILON, JR. J.